# CHRISTOPHER McCARTHY'S CASE.

No. 05-P-1164.

Suffolk. April 3, 2006. - June 15, 2006.

Present: KANTROWITZ, COHEN, & GREEN, JJ.

*Insurance,* Workers' compensation insurance. *Workers' Compensation Act,* Insurer. *Penalty. Statute,* Construction.

Where a self-insured employer disregarded an order requiring it to pay workers' compensation benefits to an injured employee and instead fashioned its own remedy (which theoretically fully compensated the injured employee), the reviewing board of the Department of Industrial Accidents did not err in ruling that the employer had failed to comply with the clear and unequivocal terms of the order, and that this failure triggered the statutory penalty set forth in G. L. c. 152, § 8(1). [545-547]

APPEAL from a decision of the Industrial Accident Reviewing Board.                                      :

*Stephen W. Sutton* (*Gregory G. Skouteris* with him) for the employer.

*Joseph M. Burke* for the employee.

KANTROWITZ, J. Today we hold that a self-insurer may not disregard an order of payment, pursuant to G. L. c. 152, § 34, and fashion its own remedy even if it theoretically fully compensates the injured employee. When faced with the situation in which it found itself, the employer, rather than unilaterally imposing its own payment plan, in contravention of a clear and unequivocal order, should have presented its alternate plan to the administrative judge for his consideration. Its failure to do so has resulted in adverse rulings before all tribunals, including ours.

*Background.* The Massachusetts Bay Transportation Authority (MBTA), the employer and self-insurer herein, appeals

pursuant to G. L. c. 152, § 12(2), from a decision of the review-
ing board of the Department of Industrial Accidents (reviewing
board) affirming the decision of an administrative judge, includ-
ing the imposition of a penalty, under the provisions of G. L.
c. 152, § 8(1), for the employer's late payment of benefits
awarded pursuant to G. L. c. 152, § 10A.

*Facts.* The employee, Christopher McCarthy, a forty-six year
old father of five, has worked for the MBTA since 1982 and is
a track maintenance supervisor for the Green Line. On
September 6, 2002, while working the night shift, around 1:00
A.M., McCarthy fell, twisted his knee, and hit it on a railroad tie.
Although his knee became sore and swollen, he continued his
shift in pain before reporting the injury to the clerk and his
supervisor in the morning. Several days later, he sought medical
attention from his orthopedic surgeon, Dr. Lester Sheehan.
Despite his ongoing discomfort, McCarthy continued to work.
A magnetic resonance image (MRI) revealed that McCarthy
suffered a torn cartilage, for which Dr. Sheehan recommended
surgery. McCarthy applied to the MBTA for coverage for the
procedure, but his request was denied based upon an independent
medical evaluation by Dr. Robert Chernack that concluded that
the injury was not work related, but caused by an underlying
arthritic condition.[1]

Despite this stance, on February 12, 2003, McCarthy elected
to have the surgery. As a result, he remained out of work from
that date until May 7, 2003, returning to work on May 8, 2003,
without further incident. While recovering from surgery, he
filed, on April 18, 2003, a claim for workers' compensation
benefits, which was denied by the MBTA on April 24. While he
remained out of work, he used sick leave and vacation days to
maintain his income.[2]

On July 16, 2003, after a conciliation and a conference pursu-
ant to G. L. c. 152, § 10A, the administrative judge issued an

---

[1]The administrative judge ultimately decided that the injury was work
related.

[2]In his decision, the administrative judge noted that McCarthy used forty-
seven sick days and twenty-five vacation days. McCarthy's payroll records
indicate, however, that from February 12 to May 7, 2003, he used thirty-nine
sick days and twenty-one vacation days. As the parties do not dispute the
figures the judge used, we need not address any discrepancies.

order of payment instructing the MBTA to pay McCarthy temporary total incapacity compensation under G. L. c. 152, § 34, for the period of February 12 to May 7, 2003,[3] at the rate of $815.91 per week, based upon McCarthy's average weekly wage of $1,359.85, for a total of $10,132.19, including interest. In addition, the judge ordered the payment of medical benefits pursuant to G. L. c. 152, § 30, as well as counsel fees and expenses.

In response to the order of payment, the MBTA's payroll department informed its workers' compensation department that McCarthy had already been paid in full for the period in question in that he had used his sick and vacation time to maintain his income.[4]

At this point, a dilemma presented itself. On the one hand there was an order to pay McCarthy a set amount of money (sixty percent of his salary). See G. L. c. 152, § 34. However, that money and more (his full salary) had already been paid to McCarthy. Rather than return to the administrative judge to address the issue,[5] Kevin Sullivan, the MBTA's senior manager of payroll accounting instructed the workers' compensation depart-

---

[3]There is some inconsistency as to the dates in question. The administrative judge, in his original July 16, 2003, order, authorized G. L. c. 152, § 34, benefits from February 11 to May 8, 2003. In his findings of June 24, 2004, the pertinent period is noted as February 12 to May 7, 2003. In his findings, the administrative judge found that McCarthy had surgery on February 12 and was totally disabled until May 8. However, he notes elsewhere that McCarthy returned to work May 8. McCarthy's payroll records indicate that his first day of absence was February 12 and that he returned to work on May 8, 2003.

[4]McCarthy collected $16,590.06 in sick and vacation time for the period, accounting for 100% of his salary. The judge's order of workers' compensation benefits amounted to $10,132.19, including interest. Thus, the MBTA contends that McCarthy was overpaid. The MBTA acknowledges that it allows employees who receive workers' compensation to supplement the sixty percent of their salary received through workers' compensation with sick time (but not vacation time) for the remaining forty percent, resulting in an injured employee recovering his full salary.

[5]Months later, on November 19, 2003, the MBTA requested an emergency status conference with the administrative judge to address its problem with the July 16, 2003, order. The MBTA also sent a letter to McCarthy's counsel addressing the "double recovery" issue, indicating that the "double" recovery ordered in this case was contrary to MBTA payroll procedure, although it is not addressed in the collective bargaining agreement. The MBTA indicated to McCarthy's counsel that it was willing to enter into a § 19 agreement pursuant to G. L. c. 152, § 19, with McCarthy or it would initiate recoupment

ment (1) to withhold $9,596.65 or sixty percent of what the employee had received from the workers' compensation payment; and (2) in return, to reimburse McCarthy's sick bank for that same amount, $9,596.65 (35.14 sick days). This procedure was followed, and within fourteen days of the conference order McCarthy received a check for $535.54, which represented a small discrepancy in the payments.[6]

The MBTA appealed the conference order for a de novo determination. G. L. c. 152, § 10A(3). A hearing was held before the same administrative judge on January 22, 2004, followed by the deposition of Dr. Sheehan on February 27, 2004. Prior to the hearing, McCarthy was permitted to request the assessment of a penalty against the MBTA, pursuant to G. L. c. 152, § 8(1).

In his decision issued on June 24, 2004, the administrative judge affirmed his order of § 34 temporary total disability compensation from February 12 to May 7, 2003, and for payment of all reasonable and necessary medical expenses. In addition, the judge awarded McCarthy a penalty of $10,000 for the MBTA's late payment of workers' compensation benefits and awarded McCarthy's counsel $4,467 in attorney's fees, plus reasonable expenses.

On June 28, 2004, the MBTA appealed this decision to the reviewing board, arguing that the benefits ordered by the judge pursuant to G. L. c. 152, § 34, would be sixty percent over and above the payments the employee already received during his period of incapacity.[7] The MBTA further stated that "[t]he Self-Insurer perceived the Conference Order as merely awarding a credit for payments it already forwarded on account of, or in lieu of, the worker's compensation benefits." Thus, the MBTA

---

proceedings, which it never did.

[6]This sum represented the $10,132.19 ordered minus the $9,596.65 reimbursed to the payroll department. We are unable to reproduce exactly the calculations that led to the said amounts in this case, but note again that these are not challenged by the parties. See note 2, *supra*.

[7]The MBTA reasoned that by utilizing his sick time and vacation time, McCarthy had already received 100% of his salary during the period he was incapacitated. If he additionally was paid § 34 benefits, as per the order of the judge, McCarthy would receive an additional sixty percent of his salary, amounting to a total recovery of 160% of his salary for the period of his absence.

claims, it complied with the administrative judge's order, and consequently, the $10,000 penalty pursuant to G. L. c. 152, § 8(1), was not warranted.

The reviewing board affirmed the administrative judge's decision, ruling that "[w]e need not review the detailed discussion of 'double recovery' set out in the decision, because we consider the topic and premise to be wholly beside the point. This is a straightforward § 8(1) case about the failure of the self-insurer to make 'all payments due an employee' under the explicit terms of a conference order."[8]

On appeal, the MBTA again argues that allowing McCarthy to receive an excessive recovery would allow him to profit from his injury, contrary to public policy, and sets a bad precedent. Further, it asserts that McCarthy was made whole when his sick time was credited, and he received a check for $535.54 in response to the judge's conference order. Lastly, the MBTA claims that it is entitled to different treatment, because as a self-insurer, "sick pay benefits at the MBTA are not derived from a source other than the insurer."[9] Consequently, the MBTA challenges the reviewing board's determination that the issue of excessive recovery is irrelevant as against the weight of the evidence. Likewise, it challenges the imposition of the $10,000 penalty pursuant to G. L. c. 152, § 8(1), as its actions complied with the judge's order within the fourteen-day period required under that section.

*Discussion.* The Workers' Compensation Act does not distinguish between self-insurers and those employers covered by third-party insurance companies. "The term 'insurer' . . . shall include, wherever applicable, a self-insurer . . . ." G. L. c. 152, § 1(7), as amended by St. 1986, c. 662, § 5. Moreover, G. L. c. 152, § 25E, as amended through St. 1986, c. 662, § 21, states, in pertinent part, that "[w]orkers' compensation self-insurance groups shall be subject to all provisions of this chapter

---

[8]Concerning the MBTA's perception of the conference order as a "credit for payments it already forwarded," the reviewing board opined, correctly in our view, that "nothing of the sort was ordered therein."

[9]In a case involving an employer that purchases workers' compensation insurance through a third-party insurance company, a workers' compensation award is paid by the insurance company, not the employer, as in the present case involving a self-insurer.

and all regulations promulgated hereunder governing the conduct of insurers with respect to the payment of workers' compensation benefits, and shall be subject to all fees, fines, penalties and assessments levied upon insurers for failure to comply with the claim procedures of this chapter." Thus, the assertion that the MBTA is entitled to different treatment because of its status as a self-insurer fails by reason of the explicit language of the statute.

Next we address whether the MBTA complied with the order issued by the administrative judge on July 16, 2003, in such a way that the statutory penalty pursuant to G. L. c. 152, § 8(1), was not triggered. General Laws c. 152, § 8(1), as amended through St. 1991, c. 398, § 23, provides in pertinent part: "Any failure of an insurer to make all payments due an employee under the terms of an order . . . shall result in a penalty of . . . ten thousand dollars if not made within ninety days."

The MBTA does not dispute that it did not pay McCarthy the amount ordered, $10,132.19. Instead, the MBTA claims that it complied with the order when, as its senior manager of payroll accounting, Kevin Sullivan, testified, "I took the liberty of saying that [McCarthy] was prepaid out of the judge's order and basically what I did was I requested [the workers' compensation department] to pay me back that money. And, in turn I credited Mr. McCarthy's sick bank for 34.15 days, not the actual money, but the actual days which he could use [at] a later date in his career."

This form of "self-reimbursement" did not comply with the terms of the administrative judge's unequivocal order that "the insurer . . . pay the claimant temporary total incapacity compensation."[10] As a result, the administrative judge and the

---

[10]The Workers' Compensation Act "sets up a system of money payments for the loss of earning capacity sustained by an employee by reason of a work-connected injury." *Gunderson's Case*, 423 Mass. 642, 644 (1996), quoting from Locke, Workmen's Compensation § 301, at 344 (2d ed. 1981). See *Gillen's Case*, 215 Mass. 96, 99 (1913); *Sullivan's Case*, 218 Mass. 141, 143 (1914) (objective of the workers' compensation act is to "give compensation for a total or partial loss of the capacity to earn wages"). As such, it may be asserted that the MBTA's solution, which did not provide a cash payment, was improper. Regardless, the proper avenue was presenting its plan to the judge, not implementing it in contravention of his order.

reviewing board did not commit error in ruling that the employer failed to comply with the administrative judge's order of July 16, 2003.

The MBTA's failure "to make all payments due an employee under the terms of an order," triggered the statutory penalty set forth in G. L. c. 152, § 8(1). See *Eastern Cas. Ins. Co.* v. *Roberts*, 52 Mass. App. Ct. 619, 621 (2001) ("Effective December 24, 1991, . . . the Legislature amended G. L. c. 152, § 8(1), thereby providing a statutory penalty for certain late payments"). The language of § 8(1) is clear and does not need to be "enlarged or limited by construction." *Gateley's Case*, 415 Mass. 397, 399 (1993). As per that statute, the $10,000 penalty was triggered when the MBTA failed, for more than ninety days, to pay the McCarthy the amount specified in the administrative judge's order.[11]

*Decision of the reviewing
board affirmed.*

---

[11]Whether McCarthy was entitled by statute or through his collective bargaining agreement to retain the funds previously received during his incapacity, or whether the MBTA may have recouped all or some of this money, is not before us. It does not appear from the record that the MBTA attempted to recover these funds in any way other than through the course of its unilateral self-reimbursement.