DOUGLAS GODFREY *vs.* GLOBE NEWSPAPER COMPANY, INC.

Suffolk. February 11, 2010. - June 16, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Anti-Discrimination Law,* Termination of employment, Handicap. *Employment,* Discrimination, Termination. *Handicapped Persons. Practice, Civil,* Summary judgment. *Words,* "Qualified handicapped person," "Essential functions."

Discussion of the standard of review applicable to a grant of summary judgment in an action alleging discrimination in employment. [118-119]

Discussion of the elements necessary to establish a prima facie case of discrimination in employment on the basis of handicap [119-120].

In a civil action alleging discrimination in employment on the basis of handicap, the judge properly granted summary judgment in favor of the defendant employer, where the plaintiff did not establish that he was a qualified handicapped person within the meaning of G. L. c. 151B, § 1 (16), in that there was no material dispute (based on the plaintiff's concession in his response to the defendant's statement of undisputed facts) that the plaintiff could not perform an essential function of his job [120-121]; further, there was no material question of disputed fact whether a reasonable accommodation was possible, in that, with regard to the plaintiff's initial request for an accommodation of a reduced schedule, he received the accommodation he sought, even without demonstrating that he was a qualified handicapped person or that the accommodation requested was reasonable [122-123], and in that an accommodation that the plaintiff sought after he had been terminated from his position was not reasonable, given that it would necessitate the creation of a position that did not require essential functions that the plaintiff could not perform or an assignment to a new position altogether [123-125].

In a civil action alleging discrimination in employment on the basis of handicap, the judge properly granted summary judgment in favor of the defendant employer on a claim that the employer violated G. L. c. 151B, § 4 (16), by failing to offer the plaintiff placement in a light-duty position, where the plaintiff did not establish that the employer had a policy of placing injured employees in light-duty positions on return from workers' compensation leave. [125-126]

In a civil action in which the plaintiff claimed that the reason offered for the termination of his employment was a pretext for discrimination on the ground of his disability, in violation of the workers' compensation act, G. L. c. 152, § 75B, the judge properly granted summary judgment in favor of the defendant employer, where the plaintiff could not establish that he was a qualified handicapped person within the meaning of the statute. [126-127]

CIVIL ACTION commenced in the Superior Court Department on January 28, 2005.

The case was heard by *Paul E. Troy,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Mark W. Batten* for the defendant.

*Paul H. Merry (Andrea L. Haas* with him) for the plaintiff.

COWIN, J. The plaintiff was disabled as a result of injuries sustained during the course of his employment. He contends that he is a qualified handicapped person under G. L. c. 151B, § 1 (16), and that, in violation of G. L. c. 151B, § 4 (16), his employer refused to offer him a reasonable accommodation to enable him to continue to work as an assistant press foreman after his injury. In addition, the plaintiff claims that, shortly after he requested such accommodation, his employment was terminated and the reasons offered for his discharge were a pretext for unlawful discrimination under G. L. c. 151B. He contends also that his employer contravened provisions of the workers' compensation act by discriminating against him because of his disability, in violation of G. L. c. 152, § 75B. Following the dismissal of his complaint by the Massachusetts Commission Against Discrimination, the plaintiff filed a complaint in the Superior Court. See G. L. c. 151B, §§ 5, 9; *Everett* v. *357 Corp.,* 453 Mass. 585, 599-600 (2009). Summary judgment in favor of the defendant was granted on all counts.

*Background.* We summarize the facts derived from the summary judgment record,[1] relying primarily on the parties' statements of undisputed facts, see Rule 9A(b)(5) of the Rules of the Superior Court (2004),[2] and reserving certain facts for later discussion in conjunction with specific issues. The facts

___

[1]Under Mass. R. Civ. P. 56(c), summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."

[2]Rule 9A(b)(5) of the Rules of the Superior Court (2004) provides, in pertinent part:

"Each motion for summary judgment shall be accompanied by a concise statement, in consecutive numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried, with

are undisputed[3] except as noted.[4] The plaintiff, Douglas Godfrey, worked for the defendant, Globe Newspaper Company, Inc. (Globe), for over twenty years. He started in 1977 as a substitute newspaper handler, later worked as a press operator (pressman), and became an assistant press foreman in 1997. The position of pressman consisted of loading and operating the presses to produce the printed newspapers and involved frequent climbing on the machinery. While the assistant press foreman position involved supervision of a "crew" of pressmen, it also required climbing on the presses to ensure that the paper was loaded properly and to resolve production problems.

In January, 2002, the plaintiff slipped on oil while working on the printing floor and was seriously injured. He was placed on extended medical leave and was out of work for most of the following one and one-half years. While on leave, the plaintiff underwent multiple surgeries on his shoulder and knee, the last one in March, 2003. Throughout this period, pursuant to its policy for supervisory employees injured on the job, the Globe

---

page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits . . . . Failure to include the foregoing statements shall constitute grounds for denial of the motion.

"Each opposition to a motion for summary judgment shall include a response, using the same paragraph numbers, to the moving party's statement of facts as to which the moving party claims there is no genuine issue to be tried . . . . For purposes of the motion for summary judgment, facts contained in a statement described in the first paragraph hereof shall be deemed to have been admitted unless controverted as set forth in the second paragraph hereof."

Thus, if the nonmoving party responds with evidence controverting the moving party's statement of "undisputed facts," such statement may contain facts that are actually disputed.

[3]Rule 9A(b)(5) of the Rules of the Superior Court (2004) provides also that an opposing party's response should contain "a concise statement of any additional material facts as to which the opposing party contends there is a genuine issue to be tried, with page or paragraph references to supporting pleadings, depositions, answers to interrogatories, admissions and affidavits, and in the event the opposing party disagrees with the moving party's statement of the elements of the claims as to which summary judgment is sought, a statement of the legal elements, with citations to supporting law, of each claim upon which summary judgment is opposed."

Thus, notwithstanding its name, any statement of "undisputed facts" by the nonmoving party may contain statements of facts that are indeed disputed.

[4]Disputed facts are indicated by reference to an "assertion" or "claim" or to the source of the evidence cited.

continued to pay the plaintiff his full salary. In turn, the Globe required that the plaintiff remit to the Globe all workers' compensation payments that he received that related to the injury.[5]

Although still in pain, the plaintiff returned to work on June 3, 2003. He asserts that he brought with him a letter from his physician stating that he was unable to work for more than five hours at a time and that his work schedule should be limited to five hours per day.[6] The plaintiff claims that he showed this letter to Frank Volpe, the general foreman, who derided the plaintiff and took no action on the plaintiff's request. The plaintiff states further that another assistant press foreman, James Alexander, took the letter from the plaintiff, tore it up while Volpe watched, and said that if the plaintiff was unable to work a full shift, he should not have come back to work.

The plaintiff continued working until July 21, 2003, but suffered severe pain and had to leave early or not report to work a minimum of several days each week. At his deposition, the plaintiff was unable to recall how frequently he left work early, but stated that he believed he had not worked even three days per week for the entire seven-week period. He did not recall any occasion on which his request to leave early was denied. His condition continued to deteriorate, and on July 21, 2003, he took another leave due to workplace injury pursuant to the terms of the workers' compensation act.

On August 11, 2003, while on leave, the plaintiff was asked to come to work and meet with Globe managers concerning the remittance of workers' compensation checks that the plaintiff had not signed over to the Globe. On August 13, 2003, the plaintiff was examined by a physician employed by the Globe's workers' compensation insurer. The physician's report, dated August 14, 2003, states that the plaintiff was unable to work at all at that time. On August 20, 2003, the plaintiff was informed by letter

[5]Workers' compensation payments for lost wages are less than an employee's regular salary. Where the employee is totally disabled, workers' compensation payments generally represent sixty percent of an employee's average weekly wage. See G. L. c. 152, § 34. Cf. *McCarthy's Case*, 66 Mass. App. Ct. 541, 543-544 (2006). Workers' compensation payments for medical expenses are not at issue in this case.

[6]The plaintiff made these assertions, citing his own deposition testimony, in his reply to the defendant's rule 9A(b)(5) statement of undisputed fact.

that his employment was terminated because of his failure to return the workers' compensation payments.[7]

After his termination, the plaintiff underwent additional surgeries on both of his knees during 2004. A letter from a workers' compensation physician in November, 2004, stated that, if his condition continued to improve, the plaintiff might be able to return to work as a full-time pressman. In December, 2004, more than fifteen months after the termination, and without acknowledging that his employment had been terminated, the plaintiff sent a letter to the Globe seeking an "accommodation to permit [his] return" to work. The letter asserted that the plaintiff believed light-duty positions existed that would not require him to stand or climb on the presses. The Globe declined to offer the plaintiff the sedentary position he sought (or, indeed, any position).

In January, 2005, after his complaint before the Massachusetts Commission Against Discrimination was dismissed for lack of probable cause, the plaintiff filed a complaint in the Superior Court alleging unlawful discrimination in employment under G. L. c. 151B (count I); failure to give preference in hiring under the terms of the workers' compensation act, G. L. c. 152, § 75A (count II); unlawful discrimination because of the filing of the workers' compensation claim, G. L. c. 152, § 75B (count III); defamation (count IV); wrongful termination in violation of public policy based on complaints to the Occupational Safety and Health Administration concerning workplace safety conditions at the Globe (count V); and invasion of privacy (count VII).[8,9]

A judge in the Superior Court granted the Globe's motion for summary judgment on all claims. The plaintiff appealed from the ensuing final judgment as to count I (discrimination due to disability), count II (failure to give preference in hiring), and

---

[7]The plaintiff's brother's employment was also terminated on the same day, allegedly for the same reason.

[8]The complaint did not have a count VI.

[9]In 2005 and 2006, after the complaint was filed but before the summary judgment hearing, the plaintiff's condition improved markedly. Opinion letters from his doctors and an independent workers' compensation physician state that, as of sometime in 2005, or no later than April, 2006, the plaintiff was fit to return to his former position on a full-time basis.

count III (discrimination for exercising rights under the workers' compensation act). The Appeals Court affirmed the motion judge's decision on the preferential hiring claim, but vacated the judge's decision on the two unlawful discrimination claims. See *Godfrey* v. *Boston Globe Newspaper, Inc.*, 73 Mass. App. Ct. 1123 (2009). We allowed the defendant's petition for further appellate review with respect to the plaintiff's claims on counts I and III, and we affirm the judge's decision on both counts.

*Discussion.* The plaintiff argues that, when he returned to work in June, 2003, he was denied the reasonable accommodation he sought to enable him to perform his duties as an assistant press foreman, in violation of G. L. c. 151B, § 4; that, because no reasonable accommodation was offered, he was forced to take a second workers' compensation leave; and that, shortly after he exercised his rights under the workers' compensation act at the end of July, 2003, and without engaging in any discussion of possible reasonable accommodations, the Globe terminated his employment, in violation of both G. L. c. 151B, § 4, and G. L. c. 152, § 75B. The plaintiff contends that the reason offered by the Globe for the termination was a pretext for unlawful discrimination because of his physical disability and his exercise of rights under the workers' compensation act. Asserting that there are genuine issues of material fact concerning whether he is a "qualified handicapped person" under the terms of both statutes, the plaintiff contends that the judge erred in granting the Globe's motion for summary judgment on both the G. L. c. 151B, § 4, and G. L. c. 152, § 75B, claims.

The Globe contends that there is no material dispute of fact and that the judge determined correctly that the plaintiff is not a "qualified handicapped person" pursuant to G. L. c. 151B, § 4, and G. L. c. 152, § 75B. The Globe maintains also that, because the plaintiff is not entitled to protection under either statute, it is not necessary to determine whether the reason for the termination of employment was a pretext. The Globe asserts also that it terminated the plaintiff's employment not because of his disability or his exercise of rights under the workers' compensation act, but because he failed to remit to the Globe more than one year's worth of workers' compensation checks.

1. *Standard of review.* Summary judgment is appropriate where there are no genuine issues of material fact and the mov-

ing party is entitled to judgment as a matter of law. See *Ng Bros. Constr., Inc.* v. *Cranney*, 436 Mass. 638, 643-644 (2002). In deciding a motion for summary judgment, the motion judge must consider all factual allegations, and draw all reasonable inferences therefrom, in favor of the nonmoving party. See *Maffei* v. *Roman Catholic Archbishop of Boston*, 449 Mass. 235, 242-243 (2007). We review the material evidence in the light most favorable to the nonmoving party. See *Correia* v. *Fagan*, 452 Mass. 120, 130 (2008). Summary judgment is generally disfavored in cases involving employment discrimination because the question of intent requires a credibility determination. See *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 439-440 (1995). Nonetheless, summary judgment on an employment discrimination claim may at times be appropriate. See *Brunner* v. *Stone & Webster Eng'g Corp.*, 413 Mass. 698, 705 (1992); *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432, 438 (1989).

2. *Discrimination in employment on the basis of disability.* Pursuant to G. L. c. 151B, § 4 (16), it is unlawful for an employer "to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business." A "qualified handicapped person" is one who is "capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with a reasonable accommodation to his handicap."[10] See G. L. c. 151B, § 1 (16).

A "qualified handicapped person" is entitled to a "reasonable accommodation" that will enable him to perform the essential functions of his job, so long as the accommodation does not place an undue burden or hardship on the employer. See

---

[10]A "handicap" is defined as "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment . . . ." See G. L. c. 151B, § 1 (17).

G. L. c. 151B, § 4 (16); *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 383, 386 n.3 (1993). The employee bears the initial burden of producing some evidence that an accommodation that would allow him or her to perform the essential functions of the position would be possible, and therefore that he or she is a "qualified handicapped person." See *id.* at 386 n.3. Once an employee "make[s] at least a facial showing that reasonable accommodation is possible," the burden of proof (of both production and persuasion) shifts to the employer to establish that a suggested accommodation would impose an undue hardship. See *id.*[11] If the accommodation proposed by the employee appears unduly onerous, the employer has an obligation to work with the employee to determine whether another accommodation is possible. See *Cargill* v. *Harvard Univ.*, 60 Mass. App. Ct. 585, 603-604 & n.19 (2004).

To establish a prima facie case of employment discrimination on the basis of handicap under G. L. c. 151B, § 4 (16), the plaintiff must show that he is "handicapped" within the meaning of the statute; that he is a "qualified handicapped person" capable of performing the essential functions of his job either without accommodation or with a reasonable accommodation; and that he was subject to an adverse employment action because of his handicap. See *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 449 (2002). Since the parties do not dispute that the plaintiff is "handicapped" within the meaning of the statute, we turn to whether he is a "qualified handicapped person."

a. *Essential job function.* The plaintiff contends that there is a material dispute of fact whether climbing on the newspaper presses (a task that he admits he was incapable of performing in

---

[11]Pursuant to G. L. c. 151B, § 4 (16),

"[i]n determining whether an accommodation would impose an undue hardship on the conduct of the employer's business, factors to be considered include: —

"(1) the overall size of the employer's business with respect to the number of employees, number and type of facilities, and size of budget or available assets;

"(2) the type of the employer's operation, including the composition and structure of the employer's workforce; and

"(3) the nature and cost of the accommodation needed."

the summer of 2003) is an "essential function" of his position as an assistant press foreman. The plaintiff argues that, although climbing on the presses is an essential job function for a press operator, most of the duties of an assistant press foreman involve supervision of the press "crew" and troubleshooting rather than physically adjusting the presses.

This argument is unavailing. Based on the plaintiff's own statement during the summary judgment proceedings, there is no factual dispute concerning an assistant press foreman's essential job functions. The Globe asserted in its statement of undisputed material facts, filed with its motion for summary judgment, see Rule 9A(b)(5) of the Rules of the Superior Court,[12] that "[c]limbing on the presses is an essential function of the job, both for a journeyman pressman and for the assistant foreman position that [the plaintiff] held." In his response to that statement, the plaintiff replied that that fact was "[u]ndisputed."

The plaintiff is correct that whether a particular job duty is an "essential job function" is "intensely fact-based," requiring "individualized inquiry and . . . appropriate findings of fact." See *Cargill* v. *Harvard Univ.*, *supra* at 587-588, quoting *Cox* v. *New England Tel. & Tel. Co.*, *supra* at 383-384. The plaintiff is also correct that evidence in the record disputes whether climbing on the presses was an essential function of an assistant press foreman. However, this evidence cannot overcome the plaintiff's concession in his response to the statement of undisputed facts and thus does not create a material dispute of fact. See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); *Curly Customs, Inc.* v. *Bank of Boston, N.A.*, 49 Mass. App. Ct. 197, 199 n.2 (2000). If the statement of undisputed facts is to have any meaning, the motion judge must be able to rely on it. See *Sullivan* v. *Liberty Mutual Ins. Co.*, 444 Mass. 34, 46 n.18 (2005), quoting *Dziamba* v. *Warner & Stackpole LLP*, 56 Mass. App. Ct. 397, 399 (2002) (Rule 9A[b][5] " 'is an "anti-ferreting" rule designed to assist a trial judge in the all too typical situation in which the parties throw a foot-high mass of undifferentiated material at the judge,' who must then determine whether the record contains any material facts in dispute").

---

[12]The relevant provisions of Rule 9A(b)(5) of the Rules of the Superior Court are set forth in notes 2 and 3, *supra*.

b. *Reasonable accommodation.* The plaintiff maintains that, even if climbing is an essential function, there is a material question of disputed fact whether a reasonable accommodation was possible. He argues that the Globe failed to consider two accommodations he sought, either assignment to a shorter work day or placement in a light-duty position. He asserts further that, on those occasions when climbing was necessary, he need not have climbed the presses but rather could have instructed another employee regarding the needed adjustments. He states that a determination whether such accommodations would have been unduly burdensome to the Globe requires a trial.

(i) *Initial request for accommodation.* We consider first the question of reasonable accommodation from the time the plaintiff initially requested one on June 3, 2003, until he went on leave at the end of July, 2003. According to his doctor, at that point the plaintiff was capable of working for five hours per day. The plaintiff testified that he sought an accommodation of a reduced schedule. See *Russell* v. *Cooley Dickinson Hosp., Inc., supra* at 457, quoting *Taylor* v. *Principal Fin. Group, Inc.,* 93 F.3d 155, 165 (5th Cir.), cert. denied, 519 U.S. 1029 (1996) (employee has initial burden to request reasonable accommodation in order to be able to perform his existing position). The plaintiff testified further that this request was effectively denied when the press room supervisor stood by as an assistant press foreman ripped up the doctor's letter and told the plaintiff that if he could not work full time, he should not have returned to work.[13] The plaintiff continued to work less than three shifts per week for the next seven weeks; he admits that he never worked a full week during that period. In addition, the plaintiff left work early on numerous occasions; his requests to leave work before the end of his scheduled twelve-hour shift were always allowed. On this record, there is no question of material fact in dispute concerning the plaintiff's initial request for accommodation because the plaintiff received

---

[13]In support of his assertion that a shorter work day would have been reasonable, the plaintiff submitted an affidavit stating that, on some occasions when the plaintiff was on leave, he was contacted at home and was able to resolve problems over the telephone. In other contexts, converting a full-time supervisory position to a part-time position has been determined not to be a reasonable accommodation because the employees supervised required supervision during the full eight-hour shift. See *Tompson* v. *Department of Mental Health*, 76 Mass. App. Ct. 586, 595-596 (2010).

essentially the accommodation that he sought, even without demonstrating that he was a qualified handicapped person or that the accommodation requested was reasonable.

(ii) *Whether a reasonable accommodation was possible when the plaintiff was terminated from employment.* We turn next to whether a reasonable accommodation was possible at the time the plaintiff's employment was terminated. The record does not support the plaintiff's claim that a reasonable accommodation was possible to enable him to perform the essential duties of his position at the time of his termination from employment on August 20, 2003. The evidence indicates that the plaintiff's condition had declined markedly by mid-August, 2003. By his own statement, which was consistent with the workers' compensation examination done at this time, the plaintiff was substantially impaired in his ability to climb the presses in August, 2003.[14] Indeed, sixteen months later, in his December, 2004, letter to the Globe seeking to "return" to work, the plaintiff wrote that he would need an alternate position that would not require climbing or standing on the presses.[15] Even at his deposition in September, 2005, the plaintiff asserted that, at that time, he remained physically unable to climb on presses and was able only to perform "light sedentary" work. Again, in his May, 2006, affidavit opposing the Globe's motion for summary judgment, the plaintiff asserted that he remained, at that point, unable to "kneel, bend, squat, [or] climb" and that he sought a position that would not require that he "be out on vibrating, and [at] times slippery, pressroom floors."

---

[14]In addition, a physician's report from January, 2004, five months after the termination, states that, at that point, the plaintiff was capable only of sedentary work and remained unable to do any work involving standing on slippery surfaces or requiring balancing, squatting, crawling, kneeling, or climbing.

[15]Moreover, nothing in the record suggests that, at the time his employment was terminated, the plaintiff's condition was expected to improve. See *Dziamba* v. *Warner & Stackpole LLP,* 56 Mass. App. Ct. 397, 405-406 (2002) (reasonable accommodation does not require employer to wait indefinitely for employee to recover; reasonable accommodation means one that presently or in immediate future will enable employee to perform job). While the reports from examining physicians in 2005 and 2006 indicate that the plaintiff's condition has in fact improved dramatically, even had the plaintiff been a qualified handicapped person and even if the reason for the termination of his employment was as the plaintiff claimed, the 2005 and 2006 medical reports would not have been relevant to the Globe's employment decision in August, 2003.

The plaintiff argues that, on those occasions when climbing was necessary, he need not have climbed the presses but rather could have instructed another employee on how to make the needed adjustments. He claims further that the Globe failed to consider his request for placement in a sedentary position in another department, and states that the Globe has, on a number of other occasions, assigned injured employees to "light duty" jobs in positions other than the employees' original ones.

Neither elimination of an essential duty from a position nor assignment to an unrelated position are "reasonable accommodations" within the meaning of G. L. c. 151B, § 1. See *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002) (reasonable accommodation does not require employer to "fashion a new position"); *Beal* v. *Selectmen of Hingham*, 419 Mass. 535, 541-542 (1995) (employer may refuse to accommodate handicap that "necessitates the substantial modification of employment standards"). See also *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 390 (1993) ("reasonable accommodation does not include waiving or excluding an inability to perform an essential job function").[16]

On this record, the accommodations that the plaintiff sought following his second leave were not accommodations in order to be able to perform the duties of his assistant press foreman position. See *Russell* v. *Cooley Dickinson Hosp., Inc., supra* at 457. To the contrary, the accommodations the plaintiff sought were that the Globe create an assistant press foreman job that did not require climbing or assign him to a different position altogether. Developing an assistant press foreman job that did not necessitate climbing would have caused the Globe to shift essential duties of the foreman's position to another employee.

---

[16]In contrast, pursuant to Federal law under the Americans with Disabilities Act, a "reasonable accommodation" is defined to include "reassignment to a vacant position" where the disabled person is minimally qualified to perform the duties of the position and such an assignment does not create an "undue hardship" for the employer. See 42 U.S.C. § 12111(9), (10)(B) (2006). While the plaintiff urges us to adopt this standard, the language of G. L. c. 151B, § 4, contains no such provision. We decline to add words to the statutory language that the Legislature has chosen to omit. See *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dept.*, 439 Mass. 352, 355 (2003). Moreover, neither the Federal statute nor G. L. c. 151B, § 4, requires an employer to create a new position. See *Russell* v. *Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 454 (2002).

The circumstances at the time the plaintiff's employment was terminated are analogous to those in *Cox* v. *New England Tel. & Tel. Co., supra* at 383. In that case, a telephone company employee whose position as a "splice service technician" required him to climb telephone poles was permanently injured and thereafter unable to climb such poles; he remained able to perform the other functions of the position. Although it was only in a rare emergency that a splice service technician in the urban area in which the employee worked would need to climb telephone poles, in other suburban and rural locations within the Commonwealth climbing telephone poles was necessary more frequently. *Id.* at 386-389. We concluded that, under G. L. c. 151B, § 4 (16), the employer had no duty to create a new position of splice service technician for nonemergency work in the Dedham-Dorchester area. *Id.* at 390. While climbing telephone poles was admittedly rare, it was an essential job function that the employee was no longer able to perform and therefore he was not a qualified handicapped person under the statute. *Id.*

Since at the time his employment was terminated the plaintiff was unable to perform one of the essential duties of an assistant press foreman, with or without a reasonable accommodation, he was not a qualified handicapped person pursuant to G. L. c. 151B, § 4 (16), and the Globe had no obligation to engage in dialogue concerning a nonexistent possibility of accommodation. Therefore, summary judgment was granted properly on the plaintiff's claim that the termination was unlawful discrimination under G. L. c. 151B, § 4 (16).

c. *Request for light-duty position.* The plaintiff argues also that the Globe had a policy of placing injured employees in light-duty positions on return from workers' compensation leave if they were no longer physically capable of performing the duties of their former positions, but that the Globe violated G. L. c. 151B, § 4 (16), because it did not offer him such a position. We note first that the plaintiff's request for a light-duty position was not made until fifteen months after the termination of his employment. Furthermore, as stated, G. L. c. 151B, § 4 (16), does not require an employer to create a new position when an employee is not capable of performing the duties of his former position. See *Russell* v. *Cooley Dickinson Hosp., Inc., supra* at 454. However, if the Globe in fact had a policy of assigning to

sedentary positions injured employees who, upon their return from leave, were unable to perform the more physically demanding work of their former positions, and if, in this case, such a policy did not create an undue hardship for the Globe, the Globe would be required to apply that policy to the plaintiff. See *Lolos v. Solutia, Inc.,* 193 F. Supp. 2d 364, 371-372 (D. Mass. 2002). Even if we view this claim as a claim for discrimination based on Globe policy, the plaintiff has not established that such a policy existed.

In support of his assertions on possible reassignment to a sedentary position in another department, the plaintiff submitted affidavits and deposition testimony from current and former Globe employees. This evidence indicates that the Globe had, on a number of other occasions, assigned injured pressroom employees to "light duty" jobs in positions other than the employees' original ones. An affidavit of a retired senior manager states that, at the time he supervised the pressroom, he had a policy of placing employees with work-related injuries in jobs that they were capable of doing whenever they could no longer perform their original jobs. Additionally, depositions from two current senior managers state that the Globe had an informal policy of assigning light-duty positions to injured pressroom foremen who were no longer capable of performing their more physically demanding jobs. These managers, however, were unable to name a single injured pressroom foreman who had been offered a light-duty position.

None of this evidence establishes that the Globe had a policy of offering pressroom employees light-duty positions. The anecdotal affidavits concerning other employees who were asserted to have been given sedentary positions over an unspecified period of time, significantly earlier than the events at issue here and under unspecified circumstances, do not establish a consistent, company-wide policy at the time of the plaintiff's termination and do not establish that the plaintiff was treated differently than similarly situated employees. See *Matthews* v. *Ocean Spray Cranberries, Inc.,* 426 Mass. 122, 129-130 (1997). Thus, summary judgment was granted properly on the plaintiff's claim that the Globe violated G. L. c. 151B, § 4 (16), by failing to offer him placement in a light-duty position.

3. *Claims under the workers' compensation act.* The workers'

compensation act protects employees who are temporarily or permanently disabled by work-related injuries. Pursuant to G. L. c. 152, § 75B (1), an "employee who has sustained a work-related injury and is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of such job with reasonable accommodations, shall be deemed to be a qualified handicapped person under the provisions of [G. L. c. 151B]."

The plaintiff claims that the reason offered for the termination of his employment was a pretext for discrimination on the ground of his disability in violation of G. L. c. 152, § 75B. As the judge ruled on summary judgment, the plaintiff's claim of discrimination due to disability under the terms of the workers' compensation statute, G. L. c. 152, § 75B, must fail for the same reasons that his claim for unlawful termination under G. L. c. 151B, § 4 (16), fails. General Laws c. 152, § 75B, uses the same definition of a "qualified handicapped person" as does G. L. c. 151B, and requires the same protection for a work-related injury as is accorded under G. L. c. 151B, § 4 (16). The plaintiff claimed discrimination under this provision only in relation to the termination of his employment in August, 2003. Because, as stated, the plaintiff cannot succeed in establishing that, at that time, he had sustained a work-related injury but was "capable of performing the essential functions of [his position as assistant press foreman], or . . . would be capable of performing the essential functions of such job with reasonable accommodation," he was not a "qualified handicapped person" under § 75B of the workers' compensation act.

*Conclusion.* Because there are no genuine issues of material fact and the plaintiff cannot establish that he is eligible for relief under G. L. c. 151B, § 4 (16), or G. L. c. 152, § 75B, we affirm the motion judge's decision allowing the defendant's motion for summary judgment on counts I and III, the claims of discrimination due to disability and discrimination due to the exercise of rights under the workers' compensation act.

*So ordered.*