# PAUL S. SLOAN, JR.'S CASE.

No. 09-P-1218.

Suffolk. February 3, 2010. - October 19, 2010.

Present: KAFKER, VUONO, & SIKORA, JJ.

*Workers' Compensation Act,* Interest, Findings by administrative judge. *Interest. Penalty.*

The reviewing board of the Department of Industrial Accidents (board) correctly determined that the employee was entitled to interest, as called for by G. L. c. 152, § 50, on the retroactive payment of workers' compensation benefits that the insurer had been ordered to pay after conference, where the insurer's partial payment did not exempt the insurer from its obligation to pay interest on the remaining amount [123-125]; further, the board properly assessed a penalty against the insurer in the amount of $10,000, as provided by G. L. c. 152, § 8(1), for failure to pay the interest within ninety days [125].

There was no merit to the employee's claims that the determination by an administrative judge in the Department of Industrial Accidents of the employee's weekly earning capacity for purposes of a workers' compensation award was unwarranted by the facts, arbitrary or capricious, or an abuse of discretion; that the judge erred in finding that the employee had not suffered any permanent disability; or that the judge abused his discretion by declining to adopt the medical opinion of the employee's expert. [125-126]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Erin M. Mullen* for the insurer.

*Charles E. Berg* for the employee.

VUONO, J. The reviewing board of the Department of Industrial Accidents (board), reversing in part the decision of the administrative judge, held that the employee, Paul S. Sloan, Jr., was entitled to interest, as called for by G. L. c. 152, § 50,[1] on

---

[1]General Laws c. 152, § 50, as amended through St. 1991, c. 398, § 77, provides: "Whenever payments of any kind are not made within sixty days of

the retroactive payment of benefits that the insurer, American Home Assurance, was ordered to pay after conference. Furthermore, the board assessed a penalty in the amount of $10,000, as provided by G. L. c. 152, § 8(1), against the insurer for failure to pay the interest within ninety days.[2] The board also summarily affirmed the administrative judge's finding that Sloan's disability had ended and his dismissal of Sloan's claim for an alleged psychiatric injury. The insurer and the employee cross appeal the board's decision, which we affirm in all respects.

*Background.* On June 20, 2005, Sloan was working for Construction Materials Service, Inc., when he injured his back while lifting a concrete pipe. The insurer voluntarily began payment of benefits under G. L. c. 152, § 34, and within fourteen days of its receipt of Sloan's claim, paid him $6,713.16 for the period of June 21, 2005, through October 12, 2005, but did not continue weekly benefits.

Following a G. L. c. 152, § 10A, conference on December 5, 2005, the administrative judge ordered the insurer to pay temporary total incapacity benefits of $648.06 per week based on an average weekly salary of $1,080.10, from July 14, 2005, and continuing. The conference order tracked the language of the statute and included the following provision: "[W]here payments of any kind have not been made within sixty days of claim, the insurer shall pay interest at the rate of ten percent per

---

being claimed by an employee, dependent or other party, and an order or decision requires that such payments be made, interest at the rate of ten percent per annum of all sums due from the date of the receipt of the notice of the claim by the department to the date of payment shall be required by such order or decision. Whenever such sums include weekly payments, interest shall be computed on each unpaid weekly payment."

[2]General Laws c. 152, § 8(1), second par., inserted by St. 1991, c. 398, § 23, provides in relevant part: "Any failure of an insurer to make all payments due an employee under the terms of an order, decision, arbitrator's decision, approved lump sum or other agreement, or certified letter notifying said insurer that the employee has left work after an unsuccessful attempt to return within the time frame determined pursuant to paragraph (a) of subsection (2) of this section within fourteen days of the insurer's receipt of such document, shall result in a penalty of two hundred dollars, payable to the employee to whom such payments were required to be paid by the said document, provided, however, that such penalty shall be one thousand dollars if all such payments have not been made within forty-five days, two thousand five hundred dollars if not made within sixty days, and ten thousand dollars if not made within ninety days."

annum on all sums due from the date of receipt of the notice of claim until the date of payment of this order." On December 17, 2005, the insurer paid Sloan $7,729.32, which brought the payments up to date, but paid no interest on that sum.

Both parties appealed the conference order and joined additional claims, all of which were addressed at a de novo hearing before the same administrative judge. In a decision dated September 26, 2007, the administrative judge awarded Sloan temporary total incapacity benefits for the period of July 14, 2005, to February 8, 2006, and temporary partial incapacity benefits from February 9, 2006, to April 9, 2006. The administrative judge further found that Sloan had failed to establish that he suffered a compensable psychiatric injury and denied his claim for § 50 interest and a § 8(1) penalty.

In concluding that Sloan was not entitled to interest, the administrative judge interpreted the statute as requiring the payment of interest only when the insurer has made no payments of any kind within the sixty-day period. Because the insurer had made a partial payment of $6,713.16 within fourteen days of the claim, the administrative judge determined that the insurer was not required to pay interest on any amount it was subsequently ordered to pay.

Sloan appealed the denial of his claims to the board. As we have previously noted, the board rejected the administrative judge's interpretation of § 50. Instead, the board construed "the qualification for payment of § 50 interest, '[w]henever payments of any kind are not made within sixty days of being claimed,' to include any payment not made within the sixty day time frame which is later ordered." The board pointed out that "[h]ere, some 'payments of any kind' in fact were 'not made within sixty days of being claimed by the employee,' namely, the additional retroactive benefits ordered as a result of the December 5, 2005, conference." Therefore, the board concluded, the insurer was obligated to pay § 50 interest on the additional amount. Furthermore, because the conference order specifically required the payment of interest, the board assessed the insurer a § 8(1) penalty. See *Johnson's Case*, 69 Mass. App. Ct. 834, 838 (2007).

*Discussion.* We turn first to the insurer's argument challenging the board's interpretation of G. L. c. 152, § 50. "We review

questions of statutory construction de novo and will overturn an agency decision inconsistent with governing law. . . . However, where the agency is 'charged with primary responsibility for administering [the statute],' we grant its interpretation substantial deference and will not disturb it where the interpretation is reasonable." *Haines's Case*, 71 Mass. App. Ct. 845, 846 (2008), quoting from *Johnson's Case*, 69 Mass. App. Ct. at 838.

We conclude that the board's interpretation of G. L. c. 152, § 50, as requiring the insurer to pay interest in these circumstances is reasonable, and we adopt it. "[I]n construing a statute, its words must be given their plain and ordinary meaning according to the approved usage of language." *Pillman's Case*, 69 Mass. App. Ct. 178, 183 (2007), quoting from *Taylor's Case*, 44 Mass. App. Ct. 495, 499 (1998). Additionally, a "statute must be interpreted according to the intent of the Legislature." *Carpenter's Case*, 456 Mass. 436, 446 (2010), quoting from *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). The board's interpretation is consistent with both of these rules.

As the board explained, "the [L]egislature's use of the plural, 'payments,' as opposed to 'payment,' supports the view that it envisioned scenarios where insurers would pay some, but not all, of the benefits claimed due. Its use of the phrase 'payments of any kind,' coupled with its directive, in the section's last sentence, that when 'such sums include weekly payments, interest shall be computed on each unpaid weekly payment,' is further evidence that the [L]egislature intended retroactive awards of compensation, insofar as they exceed periods of previously paid compensation, to be paid with interest."

The board's interpretation is also consistent with the general purpose of providing for interest payments on awards, which is to compensate the claimant for the loss of use of his money. "Interest is awarded by law so that a person wrongfully deprived of the use of money should be made whole for his loss." *Todino* v. *Wellfleet*, 448 Mass. 234, 239 (2007), quoting from *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 835 (1981).

Moreover, as the board further explained, the alternative would lead to illogical results. According to the insurer's view,

a "singular payment of *any* kind of benefit, irrespective of the dollar amount, [or] the period it covers . . . operates to free the insurer from the obligation of paying § 50 interest when it is subsequently ordered to make *any* further payment on that claim" (emphasis in original). For example, if an insurer were to pay one day of partial incapacity benefits in response to an employee's claim, but was later ordered to pay ongoing incapacity benefits retroactive to the date of injury on the claim, no interest would be due. We agree with the board that such consequences were not intended by the Legislature.

Finally, because the conference order specifically provided for the payment of § 50 interest, the board properly assessed a penalty under § 8(1). See *Johnson's Case, supra* at 839 ("The plain language of § 8[1], par. 2, requires that a penalty be assessed only where an insurer fails to make payments due under the terms of an order or decision"). See also *McCarthy's Case,* 66 Mass. App. Ct. 541, 547 (2006) (failure to comply with the terms of an order triggers the § 8[1] penalty). We do not consider persuasive the insurer's argument that no penalty is warranted because the statute is ambiguous. It suffices to note that the insurer could have avoided the imposition of a § 8(1) penalty by paying the interest due in a timely fashion and preserving the issue on appeal. See G. L. c. 152, § 12(1).

We next consider the arguments raised by Sloan. Because the board summarily affirmed the administrative judge's decision as to these issues, we review the findings and conclusions of the administrative judge. See *Dalbec's Case,* 69 Mass. App. Ct. 306, 313 (2007). There is no merit to Sloan's first argument that the administrative judge's determination of his weekly earning capacity was unwarranted by the facts, arbitrary or capricious, or an abuse of discretion. To the contrary, the calculation of Sloan's weekly earning capacity is grounded in specific subsidiary findings and reveals "reasoned decision making" on the part of the administrative judge. *Scheffler's Case,* 419 Mass. 251, 258 (1994).

Similarly, the record does not support Sloan's second argument that the administrative judge erred in finding that Sloan had not suffered any permanent disability. The administrative judge properly relied on the uncontested opinion of the impartial

medical examiner, Dr. Henry S. Urbaniak, who examined Sloan on February 9, 2006, and opined that he could resume full employment in eight weeks, namely on April 9. See G. L. c. 152, § 11A(2), as amended by St. 1991, c. 398, § 30 ("impartial physician's report shall constitute prima facie evidence of the matters contained therein").

Lastly, there is no merit to Sloan's argument that the administrative judge abused his discretion by declining to adopt the medical opinion of Dr. Mark Cutler, who opined that Sloan suffered from depression as a result of his injury. The administrative judge regarded Dr. Cutler's diagnosis with skepticism because Sloan's attorney had referred Sloan to Dr. Cutler, who evaluated Sloan on only one occasion.[3] Moreover, Dr. Cutler misstated Sloan's psychiatric history in his report and attributed Sloan's psychiatric condition in part to an earlier physical injury suffered in March, 2005. We observe as well that, at the hearing, Sloan testified that he stopped seeing Dr. Cutler because he felt better about himself. Sloan's testimony, coupled with the administrative judge's determination that Dr. Cutler's opinion was unreliable, leaves no basis for concluding that denial of Sloan's claim of a psychiatric injury was "arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law." G. L. c. 30A, § 14(7).

*Decision of reviewing board affirmed.*

---

[3]Sloan testified that he met with Dr. Cutler "a couple of times."