NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1162

EDWARD J. MATZ

vs.

UNIVERSITY OF MASSACHUSETTS AMHERST.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Edward J. Matz ("Matz"), the former head women's soccer coach for the University of Massachusetts at Amherst (UMass), appeals from a summary judgment entered in favor of UMass on his age discrimination claim.  We conclude that a rational finder of fact could find that the reason Matz was terminated from his position was due to his age.  Accordingly, we vacate the summary judgment and remand for further proceedings.

1.  Background.  Matz played college soccer and after his graduation in 1989, began a career as the head women's soccer coach at a university in Vermont.  He moved to Boston and obtained his master's degree while coaching college soccer, eventually becoming an athletic director where he coached both men's and women's college soccer at the National Collegiate

Athletic Association Division I level.  He later accepted the position of head coach of the UMass women's soccer team ("the team") in 2010.  His first employment contract was effective until 2015.  Matz signed a second contract in 2014, extending his employment as the head coach of the team through January 2018.

During his tenure as head coach, the women's soccer team did not perform consistently.  For example, in 2010 the team had a record of eight wins and eleven losses.  Their record improved in 2011 to fourteen wins, five losses, and three ties.  In 2014, their record declined when the team won only five games, lost nine and tied five.  The following year, for the first time in seven years, the team failed to qualify for the conference tournament, and the team's national ranking was lowered, netting only six wins in the season with eight losses and four tied games.  In 2016, the team won only three games, which represented the lowest number of wins in a season in the forty-three seasons of the team's history.  In 2017, the team's record improved slightly when they won seven games, lost nine games, and tied two games.

During Matz's yearly performance evaluation for the 2015 season, while noting many areas that were satisfactory, UMass informed Matz that the overall conclusion of his evaluation was that his work needed improvement as the team's national ranking

2

was lowered and the team did not advance to the conference tournament for the first time since 2008.  Ryan Bamford, Matz's supervisor, told Matz that he wanted to see the team "trending in the right direction" rather than the sole focus be on the number of wins and losses.

In 2016, a small group of players requested a meeting discuss Matz's coaching style with Bamford.  Bamford also received two letters critical of Matz's coaching.  In October of 2017, an online survey of the team was conducted by UMass which resulted in several criticisms of Matz's coaching style.  Bamford hired an independent consultant to evaluate Matz's interactions with the students.  While the consultant did not provide a written report, the consultant found that Matz was meeting his expectations as head coach of the team, that his feedback to the student athletes was appropriate, and that the student complaints could not be confirmed.

In November 2017, at the age of fifty-one, Matz was informed that he would no longer be employed as the head women's soccer coach and that his contract would not be renewed.  He later filed this lawsuit alleging age discrimination.

2.  Standard of Review.  The grant of summary judgment is appropriate "where there is no material issue of material fact in dispute and the moving party is entitled to judgment as a matter of law" (citation omitted).  Adams v. Schneider Electric

3

USA, 492 Mass. 271, 280 (2023).  In employment discrimination cases based upon disparate treatment, summary judgment is generally disfavored because proof of a discriminatory motive "is 'elusive and rarely is established by other than circumstantial evidence.'"  Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 38 (2005), quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439, (1995).  See Adams, supra, quoting Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 689 (2016).  ("Summary judgment is 'a disfavored remedy in the context of discrimination cases based on disparate treatment . . . . because the ultimate issue of discriminatory intent is a factual question'").  In reviewing the grant of summary judgment, we evaluate the record de novo and accept the facts, together with all of the reasonable inferences to be drawn from the facts, in the light most favorable to the nonmoving party. See Godfrey v. Globe Newspaper Co., 457 Mass. 113, 119 (2010).

3.  Discussion.  In order for Matz to prevail on a complaint for age discrimination under G. L. c. 151B, § 4, he must establish that:  (1) he is a member of a protected class; (2) was subject to an adverse employment action; (3) that the employer bore "discriminatory animus" in taking the action; and (4) that the animus was the reason for the action.  See Bulwer, 473 Mass. at 680.  It is undisputed that Matz is a member of a protected class and that he suffered an adverse employment

4

action.  As in many cases of this nature, because direct evidence of discriminatory animus and causation rarely exists, an employee can survive a summary judgment motion "by providing indirect or circumstantial evidence [of discriminatory animus and causation] using the familiar three-stage, burden-shifting paradigm first set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973)" (citation and quotations omitted).  Id. at 680-681.

The first stage of this paradigm requires the plaintiff to prove a prima facie case of discrimination.  See Bulwer, 473 Mass. at 681.  In order to establish a prima facie case of discrimination, the plaintiff must establish that he is a member of a protected class, that he performed his job at an acceptable level, that he suffered an adverse employment action and the adverse employment action "occurred in circumstances that would raise a reasonable inference of unlawful discrimination." Sullivan, 444 Mass. at 45.  In cases involving termination and replacement, the employee must prove that the employer sought to fill the position with a person who possessed similar qualifications.  Id. at 41.  If the plaintiff meets this burden, the second stage requires the employer to rebut the presumption of discrimination established by the plaintiff by "articulating a legitimate, nondiscriminatory reason" for the adverse action (citation omitted).  Bulwer, 473 Mass. at 681.  Should the

5

employer meet their burden, the third and final stage, often referred to as "the burden of production," requires the employee/plaintiff to present evidence that "the employer's articulated justification . . . is not true but a pretext" citation omitted.  Id.  Massachusetts is a pretext only jurisdiction and "[t]o survive a motion for summary judgment, the plaintiff need only present evidence from which a reasonable jury could infer that 'the . . . facially proper reasons given [by the employer] for its action against [the employee] were not the real reasons for that action.'"  Id. at 682, quoting Wheelock College v. Massachusetts Comm'n Against Discrimination, 371 Mass. 130, 139 (1976).  While the plaintiff does bear the burden of production, the burden of persuasion at the summary judgment stage always remains with the moving party, here UMass.

a.  Questions of material fact.  With this framework in mind, we analyze whether Matz established a prima facie case of age discrimination.  UMass concedes that the plaintiff is a member of a protected class but argues that Matz was not performing his job at an acceptable level and thus challenges that Matz met his burden under the first stage of the burden-shifting paradigm:  establishing a prima facie case of age discrimination.  In essence, UMass claims that Matz's undisputed poor record and the student criticisms of his coaching abilities necessitates a finding that he was not performing his job at

6

acceptable levels and thus that summary judgment should be entered in its favor.  We disagree.

Although the record certainly does contain criticisms of Matz's coaching techniques and his performance evaluation for the 2015 season indicated that he needed improvement, the record also contains numerous positive evaluations inconsistent with these criticisms.  Matz only has to establish by a preponderance of evidence that he was performing his job at an acceptable level, and he has met his burden.  At the summary judgment stage, "a court does not resolve issues of material fact, assess credibility, or weigh evidence."  Kernan v. Morse, 69 Mass. App. Ct. 378, 382 (2007).  We conclude, as did the Superior Court judge, that the plaintiff has satisfied his obligation under the first stage of the burden-shifting paradigm to make out a prima facie case of discrimination.  UMass contends that Matz's termination was due to his poor record of wins and losses, reported negative student athlete experiences, and his poor performance reviews for the 2015 and 2016 seasons.  We conclude, and Matz does not seem to challenge otherwise, that UMass has proffered a nondiscriminatory reason for terminating Matz and, as a result, UMass has met its burden under the second stage of the burden-shifting paradigm.

Because UMass met its burden under the second stage of the burden-shifting paradigm, only the third stage of the analysis

7

remains -- whether Matz has produced sufficient evidence that would allow a reasonable jury to infer that UMass' proffered reason for his termination was pretextual.  The plaintiff offers the following arguments to support an inference that Umass' alleged nondiscriminatory reasons are not the real reasons his employment was terminated.  He argues his success as a coach was not solely hinged on wins and losses.  Even still, recognizing the importance of a head coach's responsibility to recruit and maintain a winning team, he notes that his record of wins more than doubled between 2016 and 2017.  Matz argues that the improvement in the 2017 season, while admittedly not resulting in an overall winning season, is evidence from which a reasonable jury could infer that the proffered reason was not true.

As to the student athlete experiences, Matz notes that only seven out of a total of twenty-eight student athletes complained about his coaching, thereby creating an inference that the other twenty-one students were not dissatisfied.  The consultant's findings about Matz's interactions with the student athletes directly conflict with one of the proffered reasons for Matz's termination.

While conceding that his performance review for the 2015 season resulted in an overall rating of needing improvement, in many of the categories of this evaluation Matz either met

8

expectations or exceeded expectations.  Notably, in the performance evaluation for the 2014 season, Matz received one rating of "mastery and expertise," and an overall rating of "exceeds expectations," despite having only won five games.  In addition, Matz offered some evidence that during the time period of 2016 to 2018, some UMass coaches whose contracts were not renewed were replaced with younger coaches.

In order to survive a motion for summary judgment at the third stage, Matz need only produce sufficient evidence that one of the proffered reasons by UMass was pretextual.  He has done so here.  In sum, although UMass rebutted Matz's prima facie case of discrimination, there is sufficient evidence from which a reasonable jury could find that UMass terminated Matz because of his age.

The summary judgment is vacated, and the matter is remanded to the Superior Court for further proceedings consistent with this memorandum and order.

<u>So ordered</u>.

By the Court (Vuono, Meade & Walsh, JJ.[1]),

*Joseph F. Stanton*

Clerk

Entered:  December 7, 2023.

---

[1] The panelists are listed in order of seniority.