SUPERIOR COURT 
 
 COMMONWEALTH OF MASSACHUSETTS v. MV REALTY PBC, LLC; MV OF MASSACHUSETTS, LLC; MV BROKERAGE OF MASSACHUSETTS, LLC; MV REALTY HOLDINGS, LLC; MV REALTY RECEIVABLES 1, LLC; MV RECEIVABLES II, LLC; MV RECEIVABLES III,

 
 Docket:
 2284CV02823-BLS2
 
 
 Dates:
 April 18, 2025
 
 
 Present:
 Kenneth W. Salinger Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ON THE COMMONWEALTH’S MOTION FOR SUMMARY JUDGMENT
 
 

 MV Realty PBC, LLC, and MV of Massachusetts, LLC engaged in the business of advancing money to cash-strapped Massachusetts homeowners in exchange for a 40-year exclusive right to list their home for sale, with a right to repayment of at least 10 times the original loan amount upon a future sale or transfer of the property, and more if property values have increased. The Court recently defaulted these two entities for repeated discovery violations and ordered that they be deemed liable on all claims asserted against them. The other defendants are the owner of MV Realty PBC, corporate affiliates, or officers.
The Commonwealth seeks summary judgment in its favor on all remaining claims and issues. The Court will deny this motion, except as to a portion of the restitution damages sought against the two defaulted defendants. It will also grant summary judgment in favor of MV Brokerage of Massachusetts, LLC, because the Commonwealth now concedes that this entity was not involved in and had no connection to any of the conduct challenged in this case.
The Court will deny summary judgment against the other non-defaulted business entities because the Commonwealth cites no evidence that would support holding them liable for wrongdoing by MV Realty PBC or MV of Massachusetts, or suggesting that any of these entities participated in making deceptive representations to or consummating challenged transactions with Massachusetts consumers.
It will deny summary judgment against Antony Mitchell and David Manchester (the CEO and COO of MV Realty PBC) because the claims against them turn on disputed issues of material fact.
 
                                                            -1-
 
Finally, the Court will assess $139,619.37 in restitution damages against MV Realty PBC and MV of Massachusetts, but will deny the request to assess a small amount of additional restitution damages, impose $25.6 million in civil penalties, or craft permanent injunctive relief because the Court will also have to resolve disputed issues of material fact before it can determine what additional remedies may be appropriate against these defaulted defendants.[1]
1. Reliance on Prior Rulings. The Commonwealth seeks to avoid significant aspects of its burden of proof by arguing that the findings and rulings in the Court’s preliminary injunction decision at the outset of this case are final and conclusive, and that later decisions imposing discovery sanctions on MV Realty PBC and MV of Massachusetts bar the other defendants from offering certain kinds of evidence. Neither of these arguments has merit.
1.1. Preliminary Injunction Decision. The Commonwealth’s assertion that the Court’s decision granting preliminary injunction relief includes a binding determination that the Homeowner Benefit Agreements (HBAs) entered into by MV of Massachusetts were loans, and that this constitutes immutable “law of the case,” is incorrect.
In deciding the preliminary injunction motion, the Court was required to and did make findings of fact based on the limited evidentiary record presented to it. The Court found that the Commonwealth was likely to succeed in proving that that MV deceived consumers by saying that it was offering “free money” that was “not a loan” and would never have to be repaid. It also found, based on the same limited record, that MV was contracting to provide very limited services that would not justify a three percent commission on a future sale of someone’s home, and that MV was agreeing in the HBAs to advance a lump sum to the property owner in exchange for an essentially guaranteed right to repayment of that amount plus substantial implicit interest.
In deciding the Commonwealth’s summary judgment motion, the Court must consider a very different and much more robust evidentiary record. And it may not resolve disputed issues of fact, but instead must construe all of the evidence
 
--------------------------------------------
 
[1] The summary judgment papers also address the merits of the claims against  MV Realty PBC and MV of Massachusetts, because those defendants had not yet been defaulted when the Commonwealth prepared and served its summary judgment motion. Now that those parties have been defaulted, however, the Court need not decide whether the Commonwealth would have been entitled to summary judgment as to the liability of those entities.
 
                                                            -2-
 
in the light most favorable to the Defendants. The Court “must … draw all reasonable inferences” from the evidence presented “in favor of the nonmoving party,” as a jury or judicial fact finder would be free to do at trial. Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010). In other words, it must “view the evidence indulgently in favor of the nonmoving party and without considering witness credibility, weighing the evidence, or making findings of fact” (cleaned up). O’Connor v. Redstone, 452 Mass. 537, 540 (2008).
Since a preliminary injunction “must be granted or denied after an abbreviated presentation of the facts and the law,” any findings or rulings made at that stage are not binding and “may not correspond to the final determination.” Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 645 (1987); accord Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). The Commonwealth’s argument to the contrary is incorrect.
1.2. Sanctions Orders. The Commonwealth’s further argument that all Defendants are bound by prior orders imposing sanctions against only the two original defendants is also wrong.
The Commonwealth obtained escalating sanctions against MV Realty PBC and MV of Massachusetts for their repeated and deliberate failure to comply with discovery orders. The sanctions were in the form of orders taking certain facts as established, establishing a rebuttable presumption as to other facts, barring the introduction of certain evidence, defaulting these two entities, and deeming the liability of these two defendants to be established.
It made sense, before the original defendants were defaulted, for the Commonwealth to rely on these orders in seeking summary judgment against MV Realty PBC and MV of Massachusetts.
However, almost six weeks after the original defendants were defaulted, the Commonwealth argued in it’s a reply memorandum that these sanctions should also apply with fully force against the other defendants, even though (I) the discovery orders violated by MV Realty PBC and MV of Massachusetts were issued in March and July 2024; (ii) the other defendants were not added to the case until late August 2024 and therefore were never subject to the discovery orders giving rise to the sanctions; (iii) not surprisingly, the Commonwealth never accused them of violating any court order and no judge found that they did so, and (iv) the other defendants were never given any notice that the
 
                                                            -3-
 
Commonwealth may seek to enforce the sanctions orders against them or any opportunity to be heard on that issue.
This troubling argument is without merit.
A sanction for violation of discovery orders “must be ‘just’ ” and comport with due process. CMJ Mgmt. Co. v. Wilkerson, 91 Mass. App. Ct. 276, 284 (2017) (quoting Mass. R. Civ. P. 37(b)(2)). “Relevant factors … include ‘the degree of culpability of the … party’ to be sanctioned” (cleaned up). Id., quoting Keene v. Brigham & Women’s Hosp., Inc., 56 Mass. App. Ct. 10, 21 (2002), S.C., 439 Mass. 223 (2003). A court order applying discovery sanctions against a party without giving them notice and an opportunity to be heard would violate due process and constitute clear error. See, e.g., Security Nat’l Bank of Sioux City, Iowa v. Jones Day, 800 F.3d 936, 944–945 (8th Cir. 2015); Bowers v. National Collegiate Athletic Ass’n, 475 F.3d 524, 544–545 (3d Cir. 2007).
Since the Commonwealth did not seek or obtain sanctions against any defendant other than MV Realty PBC and MV of Massachusetts, and never demonstrated that the other defendants violated any discovery order or were responsible for another party’s violation, it may not ask that the sanctions orders be enforced against the other defendants. Judge Squires-Lee’s sanctions orders that certain facts are deemed established as against MV Realty PBC and MV of Massachusetts do not constitute findings of fact that bind any other defendant, as the Commonwealth contends in its initial memorandum. Similarly, this Court’s subsequent order defaulting MV Realty PBC and MV of Massachusetts does not mean that the factual allegations in the complaint are conclusively established against any other defendant, nor does it bar other defendants from offering or relying upon declarations or affidavits from Massachusetts consumers, as the Commonwealth asserts in its reply memorandum.
2. Claims against Non-Defaulted Business Entities. The Commonwealth has not shown that MV Brokerage of Massachusetts, LLC, MV Realty Holdings LLC, or the three “MV Receivables” entities may be held liable for any of the alleged wrongdoing in marketing and executing HBAs in Massachusetts.[2]
2.1. MV Brokerage of Massachusetts, LLC. In his affidavit, Antony Mitchell testified that MV Brokerage of Massachusetts was formed in connection with
 
--------------------------------------------
 
[2]        The “MV Receivables” entities are MV Realty Receivables 1, LLC; MV Receivables II, LLC; and MV Receivables III, LLC.
 
                                                            -4-
an anticipated financing that never took place, and that this business entity had never been used for any other purpose. During oral argument, the Commonwealth conceded the point, and that as a result there is no basis for granting any relief against MV Brokerage.
In the exercise of its discretion, the Court will therefore grant summary judgment in favor of MV Brokerage of Massachusetts on all claims against it. See Mass. R. Civ. P. 56(c) (“Summary judgment, when appropriate, may be rendered against the moving party.”); Petrillo v. Zoning Bd. of Appeals of Cohasset, 65 Mass. App. Ct. 453, 460–461 (2006) (affirming sua sponte grant of summary judgment for non-moving party).
2.2. MV Realty Holdings and the MV Receivables Entities. The Commonwealth is not entitled to summary judgment against MV Realty Holdings, LLC, or the MV Receivables LLCs. Though MV Realty PBC has been defaulted, and it is undisputed that MV Realty Holdings is the sole owner of MV Realty PBC which in turn is the sole owner of the three MV Receivables entities, those relationships provide no basis attributing the misconduct of MV Realty PBC to these other limited liability companies. Nor has the Commonwealth mustered any evidence that these other LLCs participated directly in any of the challenged conduct by MV Realty PBC and MV of Massachusetts.
2.2.1. No “Confused Intermingling” Liability. One of the “bedrock principles of corporate common law” is that separate corporations or limited liability companies are generally “regarded as separate and distinct entities,” even if there are “relationships between or among them.” Lemos v. Electrolux North America, Inc., 78 Mass. App. Ct. 376, 381 (2010), rev. denied, 459 Mass. 1103 (2011), quoting Scott v. NG US 1, Inc., 450 Mass. 766, 766 (2008); accord Kraft Power Corp. v. Merrill, 464 Mass. 145, 148 (2013) (“It is a general principle of corporate law ‘deeply “ingrained in our economic and legal systems” that a parent corporation ... is not liable for the acts of its subsidiaries.’ ”) (quoting United States v. Bestfoods, 524 U.S. 51, 61 (1998), quoting in turn Douglas & Shanks, Insulation from Liability Through Subsidiary Corporations, 39 Yale L.J. 193, 193 (1929)).
“[C]ontrol, even pervasive control, without more, is not a sufficient basis for a court to ignore corporate formalities” and hold one corporation or LLC responsible for misconduct by a parent or subsidiary. OMV Assocs., L.P. v.
 
                                                            -5-
 
Clearway Acquisition, Inc., 82 Mass. App. Ct. 561, 566 (2012), quoting Scott v. NG U.S. 1, Inc., 450 Mass. 760, 768 (2008).
As the Commonwealth notes, corporate formalities “may be disregarded ‘when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting.’ ” Scott, 450 Mass. at 767 (emphasis in original), quoting My Bread Baking Co. v. Cumberland Farms, Inc., v. 353 Mass. 614, 619 (1968).
However, “disregard of the separate corporate entity is reserved for ‘rare particular situations to prevent gross inequity.’ ” OMV Assocs., 82 Mass. App. Ct. at 570, quoting Greenery Rehabilitation Group, Inc. v. Antaramian, 36 Mass. App. Ct. 73, 79 (1994), quoting in turn My Bread Baking, 353 Mass. at 620.
To pierce the corporate veil on a “confused intermingling” theory, a private plaintiff must show that (I) the plaintiff was confused by a substantial disregard of the separate nature of different entities, (ii) the confused intermingling caused the plaintiff to suffer injury, and (iii) “it would be grossly unfair or unjust to respect the corporate boundaries.” OMV Assocs., 82 Mass. App. Ct. at 569–570. Thus, when the Commonwealth seeks to pierce a corporate veil in a c. 93A enforcement action like this, it must show that consumers were confused by the intermingling of separate corporations or LLCs, they suffered injury because of this confusion, and as a result it would be unfair not to hold all of the businesses liable for any c. 93A violation by one of them.
The Commonwealth has mustered no evidence that could support a finding that the corporate veil may be pierced on a “confused intermingling” theory in this case, because there is no evidence that any Massachusetts consumer was confused by an intermingling of business operations among legally distinct defendants. Even if “the evidence would support a finding of confused intermingling from the perspective of certain employees [or] the public at large,” a plaintiff may not pierce the corporate veil where it entered into a written contract with the defendant that expressly identified which corporate entity was entering into the transaction. See OMV Assocs., 82 Mass. App. Ct. at 567–568. Here, each HBA specified the business entity with which each homeowner was contracting. As a result, the Commonwealth cannot show that homeowners were confused by an intermingling of corporate operations. Id.
 
                                                            -6-
 
2.2.2. No Direct Liability. Nor has the Commonwealth shown that MV Realty Holdings or the MV Receivables LLCs directly participated in the alleged wrongdoing by MV Realty PBC and MV of Massachusetts.
It is undisputed that MV Realty PBC handled “all operations, including marketing and sales on the front end,” and that the HBAs with Massachusetts residents were all originated by MV of Massachusetts.
MV Realty Holdings and the three MV Receivables entities cannot be held directly liable for marketing efforts in which they did not participate or for entering into contracts to which they were not a party. That the MV Receivables entities were created to purchase and hold legal title in or rights to HBAs does not make them directly liable for alleged wrongdoing by other entities in marketing or executing the HBAs.
3. Claims against Individual Defendants. The Commonwealth is also not entitled to summary judgment against Antony Mitchell (the Chief Executive Officer of MV Realty PBC) or David Manchester (the Chief Operating Officer of MV Realty PBC), as the claims against them all turn on disputed issues of material fact.
Under Massachusetts law, corporate or LLC officers and representatives are personally liable for unfair or deceptive trade practices in which they personally participate, even if they were acting on behalf of the business entity. See Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 677 (2001) (corporate officials who were not parties to contract with plaintiff could be held liable for misrepresentations made in violation of G.L. c. 93A); Community Builders, Inc. v. Indian Motorcycle Assocs., Inc., 44 Mass. App. Ct. 537, 560 (1998) (“corporate officers may be held liable under c. 93A for their personal participation in conduct invoking its sanctions”).
Whether Mitchell or Manchester personally engaged or participated in unlawful trade practices will have to be resolved at trial.
3.1. Misrepresentation Claims (Counts I and III). The Commonwealth claims that Mitchell and Manchester violated G.L. c. 93A by causing MV’s marketing materials, sales agents, and transfer agents to make a variety of false statements to homeowners to trick them into executing HBAs. These claims cannot be resolved on summary judgment.
For example, the Commonwealth contends that MV falsely represented that payments made to homeowners pursuant to the HBAs are not loans and never
 
                                                            -7-
 
need to be repaid. Whether such statements were false and misleading turns at least in part on whether MV is essentially certain to be owed a three percent commission on future sales or transfers of their property during the 40-year term of each HBA, and on whether such payment is fair compensation for services that MV promises to provide to a selling homeowner rather than implicit interest on the initial advance paid by MV to the homeowner. These factual issues are hotly contested and cannot be resolved on summary judgment.
The Commonwealth also claims that the MV represented that the mortgage it was obtaining on homeowners’ properties was a mere “notice” and was “not a mortgage like a loan for [your] home,” and that this was false because the mortgages recorded by MV were a legal cloud on title that gave MV the right to foreclose. Defendants have presented evidence that MV recorded mortgages for 393 Massachusetts customers, those properties were subsequently refinanced 87 times, and that in 85 of those instances the property owner was able to refinance their mortgage loans without any assistance from MV. Though the Commonwealth disagrees with Defendants’ interpretation of this evidence, in deciding the summary judgment motion the Court must draw all reasonable inferences in favor of the non-moving party, meaning the Defendants. E.g., Godfrey, 457 Mass. at 119. A trial is needed to determine whether and to what extent MV’s mortgages placed a real cloud on the homeowner’s title, as well as whether and to what extent the challenged statements were deceptive.
Though the Commonwealth contends that MV did not adequately disclose that the HBAs were 40-year contracts, Defendants have presented evidence that its agents were trained to present this information accurately. It has also presented declarations by 76 consumers who testify that when they signed their HBA they knew they were contracting to use MV as their listing agent if they were to sell their home during the next 40 years. This factual dispute must be resolved at trial.
Whether MV lied when it made representations that it would act as listing agent if a homeowner decided to sell their home is also in dispute. Although the HBAs only required MV to act as a “non-agent facilitator,” MV has presented evidence that in practice it provided the services expected of a listing real estate agent to Massachusetts consumers who signed an HBA and then listed their home for sale through MV.
 
                                                            -8-
 
Similarly, whether MV informed consumers that they would have to pay an “early termination fee” equal to three percent of the price for which they sold their home is in dispute. The 76 consumer declaration submitted by MV also state that those consumers knew that if they sold or transferred their home without using MV to do so they would still have to pay MV a three percent commission on the sales price or value of their home.
The Court recognizes that to prove that conduct is “deceptive” under c. 93A the Commonwealth must show only that it has a “tendency to deceive”— meaning it “could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted” by misleading someone—and has no burden to show that every consumer was actually deceived. See Aspinall v. Philip Morris Cos., Inc., 442 Mass. 381, 394-396 (2004).
But evidence that arguably shows many or most consumers were in fact not deceived is probative of whether statements had a tendency to deceive. Cf. Jenzabar, Inc. v. Long Bow Grp., Inc., 82 Mass. App. Ct. 648, 662 (2012) (“For obvious reasons, evidence of actual consumer confusion is always relevant to the question whether consumers are likely to be confused.”) (discussing trademark infringement claim under Lanham Act). Whether Defendants’ evidence shows that challenged statements had no tendency to deceive must be resolved at trial.
3.2. Unconscionability Claim (Count II). For much the same reasons, the separate claim that Mitchell and Manchester violated G.L. c. 93A by having MV enter into unconscionable contracts with Massachusetts consumers cannot be resolved on summary judgment either.
By regulation, a commercial practice is unfair and therefore violates c. 93A if it is “unconscionable in any respect.” 940 C.M.R. § 3.16(1).
“Historically, a contract was considered unconscionable if it was ‘such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.’ ” Miller v. Cotter, 448 Mass. 671, 679 (2007), quoting Hume v. United States, 132 U.S. 406, 411 (1889), quoting in turn Earl of Chesterfield v. Janssen, 38 Eng. Rep. 82, 100 (Ch. 1750). “Later, a contract was determined unenforceable because unconscionable when ‘the sum total of its provisions drives too hard a bargain for a court of conscience to assist.’ ” Id., quoting Waters v. MIN Ltd., 412 Mass. 64, 66 (1992), quoting in turn Covich v. Chambers, 8 Mass. App. Ct. 740, 750 n.13 (1979).
 
                                                            -9-
 
“To prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).” Bourisquot v. United Healthcare Services of Delaware, Inc., 98 Mass. App. Ct. 624, 630 (2020), quoting Machado v. System4 LLC, 471 Mss. 204, 218 (2015).
The Commonwealth asserts that the HBAs were substantively unconscionable because they required homeowners to pay three percent of the value of their home to MV without receiving any service, or at least receiving no service of any real value, in exchange. This is in dispute because, as noted above, MV has presented evidence that when it entered into HBAs it intended to bind itself to provide valuable services to Massachusetts consumers who signed an HBA and then listed their home for sale through MV, and that it has in fact done so.
Of course, “substantive unconscionability ‘examines the relative fairness of the obligations assumed at the time the contract was made,’ ” not at some later time when the contract has bite. Lourenco v. Russell Cellular, Inc., 2022 WL 13671467, at *3 (Mass. App. Ct. Oct. 24, 2022) (unpublished Rule 23.0 decision), quoting Manfredi v. Blue Cross and Blue Shield of Kansas City, 340 S.W.3d 126, 133–134 (Mo. Ct. App. 2011); accord Miller, 448 Mass. at 679–680 (test for unconscionability is “whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party); see also NPS, LLC v. Minihane, 451 Mass. 417, 420–421 (2008) (in deciding whether liquidated damages provision was unconscionably excessive, court must “look to the circumstances at the time of contract formation”).
But the Commonwealth has not established that it is entitled to judgment in its favor as a matter of law as to whether the HBA’s were substantively unconscionable. Summary judgment is inappropriate where, as here, a reasonable factfinder “could return a verdict for the nonmoving party.” Dennis v. Kaskel, 79 Mass. App. Ct. 736, 741 (2011), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
The question of procedural unconscionability similarly turns on disputed issues of material fact. The Commonwealth contends that MV “used high pressure sales tactics” and misrepresentations about the contract terms to convince homeowners to sign an HBA. Defendants point to evidence that, if
 
                                                            -10-
 
credited, could be found to refute all of these points. These disputes cannot be resolved on summary judgment.
3.3. Home Solicitation Statute Claim (Count V). The so-called “home solicitation act” provides that any agreement for the sale or lease of goods or the rendering of services worth more than $25 that is “consummated” anywhere other than the address of the seller or lessor must inform the consumer in writing of their statutory right to cancel the contract within three business days. See G.L. c. 93, § 48, ¶¶ A–B. If this term is omitted from the contract, then the three-day cancellation period does not start to run “until the omitted term is provided or the copy of the agreement delivered.” Id. ¶ B. Any violation of this statute “shall constitute a violation” of c. 93A. See Id. ¶ F.
The Court assumes without deciding that, if MV Realty PBC and MV of Massachusetts had not been defaulted, the summary judgment record would establish that they repeatedly violated c. 93A have having consumers enter into HBAs that did not include the notice required by the home solicitation act.
But the Commonwealth points to no evidence in the summary judgment record conclusively establishing that either Mitchell or Manchester was personally responsible for the omission of this required notice. Even if it were undisputed that “Antony Mitchell was extensively involved with the creation and design of the HBA,” as the Commonwealth contends in Statement of Facts ¶ 97, a reasonable factfinder might not be convinced he is personally liable for any violation of the Home Solicitation Act. As a result, the Commonwealth is not entitled to summary judgment against these individual defendants on count V. Cf. Dennis, 79 Mass. App. Ct. at 741.
4. Relief Sought against Defaulted Defendants. Though MV Realty PBC and MV of Massachusetts have now been defaulted, the Commonwealth still bears the burden of proving the extent to which restitution, civil penalties, or injunctive relief should be assessed against them. See Jones v. Boykan, 464 Mass. 285, 293 (2013). After a party is defaulted, “the factual allegations of a complaint are accepted as true for purposes of establishing liability.” Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass. App. Ct. 667, 670–671 (2001), quoting Multi Technology, Inc. v. Mitchell Mgmt. Sys., Inc., 25 Mass. App. Ct. 333, 334–335 (1988). “The issue of damages, however, remains open after a default[.]” Id., 51 Mass. App. Ct. at 670; accord Jones, supra, at 295. The Court “has an obligation fairly to determine that the amount of damages” and other relief sought against a defaulted defendant “has a reasonable basis in fact. This obligation is
 
                                                            -11-
 
important to protect the integrity of the litigation process and to advance the goal of fair treatment to all parties.” Jones, supra, at 294.
4.1. Restitution of Early Termination Fees. The Commonwealth has established that it is entitled to collect $139,619.37 in restitution from MV Realty PBC and MV of Massachusetts to reimburse twelve Massachusetts homeowners who were forced to pay MV an early termination fee pursuant to HBAs that these defendants (by their misconduct violation of court orders leading to their default) have been deemed to have admitted were unlawful and violated c. 93A. The summary judgment record establishes that entering into these HBAs was a but-for cause of these homeowners having to pay fees totaling this amount.
4.2. Restitution of Sales Commissions. The Court cannot resolve the Commonwealth’s further request for an additional $20,149.30 on summary judgment. This amount equals the total of all commissions paid to MV by seven Massachusetts homeowners in connection with the sale of their homes.
“Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to repay the injured party.” Metropolitan Life Ins. Co. v. Cotter, 464 Mass. 623, 643 (2013), quoting Keller v. O'Brien, 425 Mass. 774, 778 (1997). “The fact that a person has benefited from another ‘is not of itself sufficient to require the other to make restitution therefor.’ ... Restitution is appropriate ‘only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for [one] to retain it.’ ” Cotter, quoting Keller, quoting in turn Restatement of Restitution § 1, comment c (1937).
Although by their default MV Realty PBC and MV of Massachusetts have admitted that the HBAs signed by these homeowners were unconscionable when signed, it does not automatically follow that restitution is an appropriate remedy for each of these homeowners. Whether MV provided these consumers with real estate sales services that justify the collection of a three percent commission is disputed.[3]
4.3. Civil Penalties. The Commonwealth is seeking to recover a whopping $25.8 million in civil penalties, calculated as (I) the maximum $5,000 penalty
 
--------------------------------------------
 
[3] This is a small issue. Now that MV Realty PBC and MV of Massachusetts have been defaulted, the parties should confer and work to resolve it by agreement. There should be no reason why they cannot do so.
 
                                                            -12-
 
allowed under G.L. c. 93A, § 4, for each of the 580 HBAs that were executed in Massachusetts, totaling $2.9 million, plus (ii) a $500 penalty for each of 45,385 sales or marketing communications, totaling an additional $22,692,500.[4]
In deciding whether and to what extent to assess civil penalties under c. 93A, the Court may assess all relevant circumstances including but not limited to “(1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendant's ability to pay; (4) the desire to eliminate the benefits derived by a violation; and (5) the necessity of vindicating the authority of the [Commonwealth].” Commonwealth v. AmCan Enterprises, Inc., 47 Mass. App. Ct. 330, 338 (1999), quoting Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 311 (1991).
The Court cannot resolve these issues on summary judgment. The record presented by the Commonwealth in support of its motion does not conclusively establish either the extent of the defaulted defendants’ good or bad faith or the actual injury to the public. There appears to be no evidence in this record about the defaulted defendants’ ability to pay. MV Realty PBC and MV of Massachusetts are entitled to present evidence and argument at trial about these and any other relevant factors before any civil penalties may be assessed.
4.4. Permanent Injunctive Relief. Finally, the parties seem to agree that the nature and scope of any injunctive relief against the defaulted defendants cannot be resolved on the summary judgment record. In its memorandum, the Commonwealth that the terms of any permanent injunctive relief may be addressed after the liability of all defendants is resolved. As Defendants note, the Commonwealth’s request for an order declaring that all of MV’s HBAs affecting Massachusetts property in Massachusetts are void raises questions about whether and to what extent homeowners affected by such an order would have to repay monies that they received in exchange for executing and accepting the terms of the HBAs. All issues regarding appropriate  permanent
 
--------------------------------------------
 
[4] Though Defendants alluded to the issue during oral argument, the parties have not addressed whether in the circumstances of this case the total civil penalties sought by the Commonwealth would violate the “excessive fines” clauses of the Eighth Amendment to the United States Constitution or of art. 26 of the Massachusetts Declaration of Rights. Cf. Public Employee Retirement Admin. Comm’n v. Bettencourt, 474 Mass. 60, 64–65 & n.7 (2016). The Court need not reach this issue to decide the Commonwealth’s motion for summary judgment.
 
                                                            -13-
 
injunctive relief against the defaulted defendants turn on factual issues that appear still to be in dispute.
ORDERS
The motion by the Commonwealth of Massachusetts for summary judgment is allowed in part with respect to the restitution sought from the defaulted defendants; when final judgment enters, it shall include an order that MV Realty PBC, LLC, and MV of Massachusetts, LLC, are jointly and severally liable to pay a total of $139,619.37 in restitution to the twelve Massachusetts homeowners that paid an early termination fee under their Homeowner Benefit Agreements.
The Commonwealth’s summary judgment motion is otherwise denied.
Pursuant to Mass. R. Civ. P. 56(c), the Court hereby grants summary judgment in favor of MV Brokerage of Massachusetts, LLC, on all claims against it.